CTJ-O

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| UNITED STATES OF AMERICA | NO. 4-23CR-321-0 |
|---|---|
| v. | |
| KELLY NELSON (01) | |

**INFORMATION**

The United States Attorney charges:

Count One
Conspiracy to Pay and Receive Health Care Kickbacks
(Violation of 18 U.S.C. § 371))

1.  Beginning in or around March 2017 and continuing through in or around February 2023 in the Fort Worth Division of the Northern District of Texas and elsewhere, the defendant **Kelly Nelson** did knowingly and willfully conspire and agreed with other persons both known and unknown to United States Attorney, to commit and abet certain offenses against the United States, including: to violate the Anti-Kickback statute by knowingly and willfully paying any remuneration, including any kickback, directly or indirectly, overtly or covertly, in cash or in kind, in return for referring any individual for the furnishing or arranging for the furnishing of any item or service or in return for ordering or recommending the ordering of any item or service for which payment may be made in whole or in part under a Federal health care program, in violation of 42 U.S.C. §§ 1320a-7b(b)(1)(A) and 1320a-7b(b)(1)(B).

Information—Page 1

## Introduction

2.  RK Clinical Solutions LLC ("RK Clinical") was a testing laboratory based in Phoenix, Arizona. RK Clinical focused its work on servicing family practice and internal medicine medical providers.

3.  RK Clinical collected, received, and tested specimens containing urine and blood.

4.  Kelly Nelson was a principal at RK Clinical and served as the Chief Executive Officer and as an owner of RK Clinical.

5.  In addition to those roles, Nelson also served as a sales representative and marketer for RK Clinical, and she oversaw the work of other marketers for RK Clinical in 2015 and 2016.

6.  Nelson knew that there were marketers who attempted to identify and convince medical providers to order tests and send those orders to the labs that they worked for, such as RK Clinical.

## Object of the Conspiracy

7.  The object of the conspiracy was for the defendant and others to unlawfully enrich themselves and others through a kickback scheme.

## Manner and Means of the Conspiracy

8.  The manner and means by which the defendants sought to accomplish the objects and purpose of the conspiracy included, among other things, the following:

a. Nelson sought to financially incentivize medical providers to send additional tests to RK Clinical by providing them with illegal financial incentives that were disguised to appear as legitimate business transactions.

b. These illegal financial incentives included the use of medical directorships. RK Clinical, at the direction of Nelson and RK Clinical co-owner Renee Field, entered into a contract with certain medical providers to serve as a medical director for RK Clinical.

c. Per the contract, these medical providers would provide advising and consulting services to RK Clinical in exchange for hourly payments based on such work.

d. As Nelson knew and approved, RK Clinical entered into medical directorship agreements with three different medical providers, including codefendant Mark Rubin, and individuals identified here as H.U. and R.J.

e. As part of these agreements, RK Clinical paid these medical providers substantial monies purportedly tied to medical directorship work.

f. n reality, these medical providers provided limited medical advisory services to RK Clinical. Instead, and as Nelson knew, these medical directorship agreements were used as a vehicle to funnel kickbacks to these medical providers. In exchange, these same medical providers would send a greater number of specimen samples to RK Clinical for testing.

## Overt Acts

9. In furtherance of the conspiracy, and to accomplish its objects and purpose, at least one coconspirator committed and caused to be committed, in the Northern District of Texas, and elsewhere, at least one of the following overt acts, among others:

   a. As Nelson knew, RK Clinical improperly paid Rubin approximately $330,000 in medical director payments, paid H.U. approximately $10,000 in medical directorship payments, and R.J. approximately $7,740 in medical directorship payments.

   b. In exchange, between January 2018 and December 2022, Dr. Rubin sent samples that allowed RK Clinical to bill Medicare approximately $1,012,188 and RK Clinical was paid approximately $157,442 by Medicare for these samples.

   c. Between May 2020 and December 2020, H.U. sent samples that allowed RK Clinical to bill Medicare approximately $703,834 and RK Clinical was paid approximately $86,330 by Medicare for these samples. Between January 2019 and December 2022, R.J. sent samples that allowed RK Clinical to bill Medicare approximately $152,337 and RK Clinical was paid approximately $27,296 by Medicare for these samples.

   d. In total, these three doctors sent samples that allowed RK Clinical to bill Medicare approximately $1,868,360 and RK Clinical was paid approximately $271,068 by Medicare for these samples.

All done in violation of Title 18 United States Code, Section 371.

                              LEIGHA SIMONTON
                              UNITED STATES ATTORNEY

                              /s/ P.J. Meitl
                              P.J. MEITL
                              Assistant United States Attorney
                              D.C. Bar No. 502391
                              801 Cherry Street, 17th Floor
                              Fort Worth, Texas 76102
                              Telephone: 817.252.5272
                              E-mail: philip.meitl@usdoj.gov