IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | NO. 4:23-CR-321-O |
| v. | |
| KELLY NELSON  (01) | |

## FACTUAL RESUME

PLEA TO COUNT ONE OF THE INFORMATION:
Count One:  Conspiracy to Pay and Receive Health Care Kickbacks, in violation of 18 U.S.C. § 371, with the underlying substantive offense of Paying and Receiving Health Care Kickbacks, in violation of 42 U.S.C. §§ 1320a-7b(b)(1)(A), 1320a-7b(b)(2)(A), 1320a-7b(b)(2)(B) and 1320a-7b(b)(1)(B).

MAXIMUM PENALTY:
$250,000 fine and not more than five (5) years imprisonment, plus a term of supervised release of not more than 3 years.  If the defendant violates any condition of supervised release, the Court may revoke such term of supervised release and require the defendant to serve an additional period of confinement.  Further the Court must impose a Mandatory Special Assessment of $100.00.

ELEMENTS OF THE OFFENSE:
The essential elements which must be proved beyond a reasonable doubt in order to establish the offense charged in Count One of the Indictment, are as follows:[1]

> First.   That the defendant and at least one other person made an agreement to commit the crime of paying and receiving illegal kickbacks, in violation of the Anti-Kickback statute as charged in the indictment;
>
> Second.   That the defendant knew the unlawful purpose of the agreement and joined in it willfully, that is, with the intent to further the unlawful purpose; and;
>
> Third.   That at least one of the conspirators during the existence of the conspiracy knowingly committed at least one of the overt acts described in the indictment, in order to accomplish some object or purpose of the conspiracy.

---

[1] Fifth Circuit Pattern Jury Instruction 2.15A (5th Cir. 2019).

Factual Resume—Page 1

STIPULATED FACTS:

1. RK Clinical Solutions LLC ("RK Clinical") was a testing laboratory based in Phoenix, Arizona. RK Clinical focused its work on servicing family practice and internal medicine medical providers. RK Clinical collected, received, and tested specimens containing urine and blood.

2. Kelly Nelson is a resident of Phoenix, Arizona, and was a principal at RK Clinical. Nelson served as the Chief Executive Officer and an owner of RK Clinical.

3. RK Clinical opened in January 2015 and began operating later that year. RK Clinical remained open until February 2023.

4. Nelson initially served as a sales representative and marketer for RK Clinical, and she oversaw the work of other marketers for RK Clinical in 2015 and 2016.

5. Nelson knew that there were marketers who attempted to identify and convince medical providers to order tests and send those orders to the labs that they worked for, such as RK Clinical.

6. In an effort to maximize profits, Nelson sought to financially incentivize medical providers to send additional tests to RK Clinical by providing them with illegal financial incentives that were disguised to appear as legitimate business transactions.

7. These illegal financial incentives included the use of medical directorships. RK Clinical, at the direction of Nelson and RK Clinical co-owner Renee Field, entered into a contract with certain medical providers to serve as a medical director for RK Clinical. Per the contract, these medical providers would provide advising and consulting services to RK Clinical in exchange for hourly payments based on such work.

8. As Nelson knew and approved, RK Clinical entered into medical directorship agreements with three different medical providers, including codefendant Mark Rubin, and individuals identified here as H.U. and R.J. As Nelson knew, RK Clinical improperly paid Rubin approximately $330,000 in medical director payments, paid H.U. approximately $10,000 in medical directorship payments, and R.J. approximately $7,740 in medical directorship payments.

9. In reality, these medical providers provided limited medical advisory services to RK Clinical. Instead, and as Nelson knew, these medical directorship agreements were used as a vehicle to funnel kickbacks to these medical providers. In exchange, these same medical providers would send a greater number of specimen samples to RK Clinical for testing.

10. Between January 2017 and December 2022, Rubin sent samples that allowed RK Clinical to bill Medicare approximately $1,1012,188 and RK Clinical was paid approximately $157,442 by Medicare for these samples. Between May 2020 and December 2022, H.U. sent samples that allowed RK Clinical to bill Medicare approximately $703,834 and RK Clinical was paid approximately $86,330 by Medicare for these samples. Between January 2019 and December 2022, R.J. sent samples that allowed RK Clinical to bill Medicare approximately $152,337 and RK Clinical was paid approximately $27,296 by Medicare for these samples. In total, these three doctors sent samples that allowed RK Clinical to bill Medicare approximately $1,868,360 and RK Clinical was paid approximately $271,068 by Medicare for these samples.

11. The government agrees that Nelson approved kickback payments that RK Clinical paid in the total amount of $347,740 and that this number would be the appropriate loss number under the guidelines for this defendant only, given the timeliness of her plea, and the facts and circumstances of this case.

12. The defendant agrees that the defendant committed all the essential elements of the offenses. This factual resume is not intended to be a complete accounting of all the facts and events related to the offense charged in this case. The limited purpose of this statement of facts is to demonstrate that a factual basis exists to support the defendant's guilty plea to Count One of the Information.

AGREED TO AND STIPULATED on this 9th day of October, 2023.


_____
KELLY NELSON
Defendant

_____
ASHLEY ADAMS
Attorney for Defendant